1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| PRISCILLA FOUNTAIN, | Case No. 11cv02646 BTM (JMA) |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| DSW SHOE WAREHOUSE, INC., and DOES 1 through 10, inclusive, | |
| Defendants. | |

Pending before the Court is Defendant DSW Shoe Warehouse, Inc.'s motion to dismiss the complaint (Doc. 4). For the reasons set forth herein, the Court GRANTS IN PART and DENIES IN PART Defendant's motion.

## I.  BACKGROUND

This is the second action before this Court between the same parties arising out of the same operative facts. The first action was captioned Fountain v. DSW Shoe Warehouse, Inc., et al., No. 10cv01318 (S.D. Cal.). In both actions, Plaintiff alleged the following:

Defendant DSW Shoe Warehouse Inc. ("Defendant" or "DSW") employed Plaintiff Priscilla A. Fountain, an African-American female, from June 2002 until June 23, 2009, in

a managerial capacity.   In 2007, DSW's district manager promised Plaintiff, a high-performing employee, that she would become the manager of DSW's store in La Jolla (the "La Jolla Store") in 2008.  (Compl. ¶ 13.)  However, in May 2008, Plaintiff was passed over for the job, and DSW management instead gave the job to a Caucasian female with less industry experience.  (Id. ¶ 15.)  In September 2008, the Regional Manager assigned Plaintiff to work at the La Jolla Store as "Merchandise Manager," a position under the less qualified Caucasian store manager.  (Id. ¶ 16.)  Plaintiff confronted the Regional Manager and "complained that she was being discriminated against yet no action was taken on her complaint."  (Id.)

Also in September 2008, a human resources manager at DSW informed Plaintiff that DSW "was probably violating the anti-discrimination laws by changing its company image to conform to a 'certain look' for [its] employees[,]" and Plaintiff observed "that DSW was promoting Caucasians over more qualified minority employees."  (Id. ¶ 17.)

Beginning in September 2008, Plaintiff worked under the Caucasian store manager at the La Jolla Store.  (Id. ¶ 18-19.)  During this period, Plaintiff observed, personally experienced, and reported unspecified "discriminatory employment practices and policies against herself and other African-American employees and Hispanic employees . . . . by the Caucasian store manager[,]" and reported this discrimination to DSW management.  (Id. ¶ 18.)  The Caucasian store manager retaliated against Plaintiff for making these complaints "by falsely criticizing and disciplining plaintiff and interfering with her ability to perform her duties as Merchandise Manager."  (Id.)

In February 2009, Plaintiff was demoted to assistant manager, with a decrease in pay, despite the availability of a merchandise manager position at a nearby store—all allegedly on account of her race.  (Id. ¶ 19.)

In April 2009, Plaintiff heard from a third party that the Caucasian store manager had "openly referred to [her] as 'that fucking black bitch.'"  (Id. ¶ 20.)  At this point, Plaintiff "reported to the district manager that she felt she was being singled out and subject to illegal harassment, discrimination and retaliation.  At no time did DSW conduct any meaningful

1  investigation into plaintiff's complaints or take action to prevent further unlawful actions

2  against plaintiff." (Id.)

3       On June 23, 2009, the Caucasian store manager called Plaintiff into her office and

4  "falsely accused plaintiff of repeated company policy violations." (Id. ¶ 22.) Specifically, the

5  she accused plaintiff of permitting an employee to leave without emptying the trash, failing

6  to inspect an employee's bag, and locking the store door too early.  Plaintiff disproved all

7  these accusations by showing security video recordings to the store manager.  (Id.)  On that

8  same day, Plaintiff ended her employment relationship with DSW.  (Id. ¶ 23)

9       On June 22, 2010, Plaintiff filed a complaint with the California Department of Fair

10  Employment and Housing, alleging termination, harassment, failure to prevent discrimination

11  or retaliation, retaliation, and failure to take action.  (RJN Ex. 5.)

12

13                                    **II.  STANDARD**

14

15       Under Fed. R. Civ. P. 8(a)(2), the plaintiff is required only to set forth a "short and

16  plain statement" of the claim showing that the plaintiff is entitled to relief and giving the

17  defendant fair notice of what the claim is and the grounds upon which it rests.  Conley v.

18  Gibson, 355 U.S. 41, 47 (1957).  A motion to dismiss under Federal Rule of Civil Procedure

19  12(b)(6) should be granted only where the plaintiff's complaint lacks a "cognizable legal

20  theory" or sufficient facts to support a cognizable legal theory.  Balistreri v. Pacifica Police

21  Dept., 901 F.2d 696, 699 (9th Cir. 1988).

22       When reviewing a motion to dismiss, the allegations of material fact in the plaintiff's

23  complaint are taken as true and construed in the light most favorable to the plaintiff.  See

24  Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  Although detailed

25  factual allegations are not required, factual allegations "must be enough to raise a right to

26  relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007).  "A

27  plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than

28  labels and conclusions, and a formulaic recitation of the elements of a cause of action will

1  not do." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the

2  mere possibility of misconduct, the complaint has alleged—but it has not show[n] that the

3  pleader is entitled to relief." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1950 (2009)

4  (internal quotation marks omitted).

5

6  **III.  DISCUSSION**

7

8  Plaintiff presently asserts five causes of action: (1) wrongful termination in violation

9  of public policy; (2) racial discrimination; (3) retaliation; (4) racial harassment; and (5) failure

10  to prevent discrimination, retaliation, and harassment.[1]  It is not entirely clear from the face

11  of Plaintiff's complaint which of Plaintiff's specific factual allegations form the basis of her

12  different claims.

13  Before determining whether the factual content pleaded in the Complaint supports

14  these causes of action, the Court addresses Defendant's argument that claims based on

15  conduct occurring prior to June 22, 2009, are barred by the FEHA's one year statute of

16  limitations.  The Court then addresses Plaintiff's individual causes of action.

17

18  a.    Claims based on events occurring before June 22, 2009

19

20  In Plaintiff's first action based on these same facts (the "10cv01318 matter"), the

21  Court found that all Plaintiff's claims based on "purported discriminatory conduct occurring

22  before June 22, 2009 [are] time-barred[,]" and dismissed those claims without prejudice.

23  Fountain v. DSW Shoe Warehouse, Inc., et al., No. 10cv01318, slip op. at 2 (S.D. Cal. Apr.

24  25. 2011) (order re motion to dismiss).  The Court explained:

25        An employee seeking relief under the FEHA must exhaust her
        administrative remedies by filing a verified complaint with the
26        California Department of Fair Employment and Housing
        ("DFEH") within one year of the alleged adverse action.  Cal.
27

28        [1]Plaintiff has abandoned the sixth cause of action asserted in the Complaint (failure
   to take action). See Opp. Br. at 1.

4

1               Gov't Code § 12960(d) . . . .  Here, Plaintiff filed her DFEH
2               complaint on June 22, 2010.

3 (<u>Id.</u>)  For the same reasons set forth in the Court's April 25, 2011 order in the 10cv01318

4 matter, the Court finds that Plaintiff's claims based only on purported discriminatory conduct

5 occurring before June 22, 2009 are time-barred.  Plaintiff's Complaint in the present matter

6 adds no new factual allegations occurring within the limitations period.

7       In the 10cv01318 matter, the Court *dismissed* Plaintiff's time-barred claims because

8 Plaintiff did not "assert that these claims are timely under the continuing violation theory or

9 provide any alternative ground as to why the limitations period should be extended."  (<u>Id.</u>)

10 In her opposition to the present motion to dismiss, Plaintiff states—with no explanation—that

11 the incidents occurring outside the limitations period are "pleaded only as a factual part of

12 a continuing course of illegal misconduct by [DSW]."  (Opp. Br. at 1.)  Plaintiff's conclusory

13 invocation of the "continuing violation doctrine" does not suffice to rescue claims based

14 exclusively on pre-June 22, 2009 conduct.

15       Under the continuing violation doctrine, an employer may be liable under the FEHA

16 for actions that occur before the one-year period if the acts are "(1) sufficiently similar in kind

17 . . . ; (2) have occurred with reasonable frequency; [and] (3) have not acquired a degree of

18 permanence."  <u>Richards v. CH2M Hill, Inc.</u>, 29 P.3d 175, 190 (Cal. 2001).  "The first two

19 prongs of the <u>Richards</u> test incorporate the broad issue of relatedness," or, put differently,

20 they address "whether the employer's conduct occurring outside the limitations period is

21 sufficiently linked to unlawful conduct within the limitations period that the employer ought

22 to be held liable for it."  <u>Cucuzza v. City of Santa Clara</u>, 104 Cal. App. 4th 1031, 1041-42 (6th

23 Dist. 2002).  The third prong, however, "sets an outside limit on the length of time a course

24 of conduct may continue before it is barred."  <u>Id.</u> at 1041.  The third prong is an objective

25 test: The necessary degree of permanence is achieved "when an employer's statements and

26 actions make clear to a reasonable employee that any further efforts at informal conciliation

27 . . . will be futile."  <u>Richards</u>, 29 P.3d at 191. In the present case, regardless of whether the

28 alleged pre-June 22, 2009 conduct was sufficiently similar and frequent enough to constitute

1   a continuing course of conduct, the continuing violation doctrine does not apply because "the

2   situation had reached permanence" long before Plaintiff's alleged constructive termination

3   on June 23, 2009.  See id.

4        In her complaint, Plaintiff states that by April 2009 she had been demoted from

5   "merchandise manager" to "assistant manager" with a decrease in pay (Compl. ¶ 19); she

6   had "observed and personally experienced discriminatory employment practices and policies

7   against herself and other African-American employees" (id. ¶ 18); she was aware of a

8   "pattern of discriminatory harassment due to her race" (id. ¶ 22); DSW had "refused to

9   intervene following plaintiff's complaints" (id. ¶ 23); and she had been "warned of a DSW

10  campaign of harassment, retaliation and discrimination" (id.).  Under these circumstances,

11  the discrimination against Plaintiff "had become permanent as to her" by April 2009 at the

12  latest.  Cucuzza, 104 Cal. App. 4th at 1043 (holding that plaintiff's loss of job duties for

13  allegedly discriminatory reasons had become permanent when her job title changed); see

14  also Morgan v. Regents of the University of California, 88 Cal. App. 4th 52, 65 (1st Dist.

15  2000) ("[A] continuing violation claim will likely fail if the plaintiff knew, or through the exercise

16  of reasonable diligence would have known, [she] was being discriminated against at the time

17  the earlier events occurred." (citation and quotation marks omitted)).

18       Plaintiff's opposition brief does not substantively respond to Defendant's argument

19  that the continuing violation doctrine does not apply.  In the Complaint, however, Plaintiff

20  claims that it was not until June 23, 2009—when the store manager falsely accused her of

21  company policy violations—that Plaintiff realized her "employer would not cease the

22  continuing course of illegal conduct."  (Compl. ¶ 23.)  Plaintiff nowhere explains why she

23  failed to realize that her "employer would not cease" the alleged discriminatory conduct until

24  June 23, 2009—even though she admits that by April 2009, she had already been demoted

25  and she was already aware of an ongoing pattern of discrimination, a company-wide

26  discriminatory policy, and the refusal of DSW upper level management to take action on at

27  least two separate complaints.  Moreover, as a matter of law, Plaintiff's statement regarding

28  her subjective realization is not sufficient to establish that June 23, 2009 is the date on which

1   the discrimination became permanent as to Plaintiff, since the third prong of the <u>Richards</u>

2   test is an objective inquiry.  Accordingly, the Court dismisses with prejudice all Plaintiff's

3   FEHA claims to the extent they are based exclusively on conduct occurring before June 22,

4   2009.

5

6   <u>b.</u>      <u>Wrongful termination in violation of public policy / Retaliation</u>

7

8          The FEHA prohibits an employer from either discharging an employee or otherwise

9   discriminating against the employee "in compensation or in terms, conditions, or privileges

10  of employment[,]" on account of race.  Cal. Gov't Code § 12940(a).  The FEHA also makes

11  it unlawful to "discharge, expel, or otherwise discriminate against any person because the

12  person has opposed any practices forbidden" by the FEHA.  Cal. Gov't Code § 12940(h).

13  Plaintiff's first cause of action alleges that the end of her employment relationship with DSW

14  constituted a wrongful "constructive terminat[ion]" (Compl. ¶ 23), and her third cause of

15  action alleges that she was terminated on account of her race and/or in retaliation for

16  opposing other discriminatory conduct (<u>id.</u> ¶ 32).

17         Constructive discharge is a termination of employment that is caused by the employer

18  and is against the employee's will, and occurs where "the employer either intentionally

19  created or knowingly permitted working conditions that were so intolerable or aggravated at

20  the time of the employee's resignation that a reasonable employer would realize that a

21  reasonable person in the employee's position would be compelled to resign."  <u>Turner v.</u>

22  <u>Anheuser-Busch, Inc.</u>, 876 P.2d 1022, 1029 (Cal. 1994).  "The conditions giving rise to the

23  resignation must be sufficiently extraordinary and egregious to overcome the normal

24  motivation of a competent, diligent, and reasonable employee to remain on the job . . . ."  <u>Id.</u>

25  The statute of limitations for a constructive discharge claim begins to run on the date of the

26  actual termination, and not on the date of the first adverse actions by the employer leading

27  to the discharge, because "the employee may elect to overlook earlier adverse actions . . .

28  //

1   in the hope of conciliation[.]" Mullins v. Rockwell Int'l Corp., 936 P.2d 1246, 1253 (Cal. 1997)

2   (addressing common law breach of contract claim based on constructive termination).

3       "The determination [of] whether conditions were so intolerable and discriminatory as

4   to justify a reasonable employee's decision to resign is normally a factual question left to the

5   trier of fact." Watson v. Nationwide Ins. Co., 823 F.3d 360, 361 (9th Cir. 1987) (addressing

6   Title VII constructive termination claim); see also Zody v. Microsoft Corp., No. 12cv00942,

7   2012 WL 1747844, at *5 (N.D. Cal. May 16, 2012) ("The determination whether conditions

8   were so intolerable and discriminatory as to justify a reasonable employee's decision to

9   resign is normally a factual question left to the trier of fact."). Plaintiff's Complaint includes

10   allegations that she was passed over for a promotion on account of her race; that she was

11   subsequently demoted on account of her race; that a human resources manager informed

12   Plaintiff that DSW made employment decisions based on a company-wide discriminatory

13   policy; that Plaintiff's superior referred to her as "that fucking black bitch" outside of Plaintiff's

14   presence; and that on June 23, 2009, her superior falsely accused her of multiple company

15   policy violations. The Court does not find, as a matter of law, that these allegations are

16   insufficiently "extraordinary and egregious to overcome the normal motivation of a

17   competent, diligent, and reasonable employee to remain on the job." Turner, 876 P.2d at

18   1029.

19       In opposition to Plaintiff's claims based on constructive discharge, Defendant argues

20   that the unfair criticism lodged at Plaintiff on June 23, 2009, and the racial remark made

21   outside Plaintiff's presence, are both insufficient as a matter of law to support Plaintiff's

22   constructive discharge claim. The Court disagrees. With respect to the unfair criticism, the

23   cases cited by Defendant all address either motions for summary judgment or post-trial

24   motions, and none stand for the proposition that the Court cannot consider unfair criticism

25   as one of several allegations supporting a constructive discharge claim.

26       Similarly, Defendant argues that "incidents of offensive behavior happening outside

27   the presence of the plaintiff are disregarded in evaluating the conditions of employment."

28   (Rep. Br. at 7 (citing Kovatch v. Cal. Casualty Mgmt. Co., Inc., 65 Cal. App. 4th 1256, 1244-

47 (4th Dist. 1998) (alterations and quotation marks omitted)).) However, the <u>Kovatch</u> court declined to disregard "incidents of offensive behavior" if "those incident occurred in [plaintiff's] presence *or . . . he learned of them before the termination of his employment*[.]" 65 Cal. App. 4th at 1268 (emphasis added).  Here, Plaintiff learned that her immediate supervisor had made an offensive racial remark prior to the end of the employment relationship, and thus the incident is properly considered in the constructive discharge analysis.

Taking the allegations in the Complaint as true and viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently pleaded her claims for wrongful discharge in violation of public policy and retaliation based on wrongful discharge. Accordingly, the Court DENIES Defendant's motion to dismiss as to Plaintiff's first and third causes of action.

c.     Racial discrimination / Racial harassment

A claim for discrimination under the FEHA must allege a change "in compensation or in terms, conditions, or privileges of employment."  Cal. Gov't Code § 12940(a).  Given that Plaintiff's claim of constructive termination is predicated on her allegations of racial discrimination, the Court finds that the same allegations found sufficient to establish a claim for constructive termination are also sufficient to state a claim for discrimination.

A claim for harassment under the FEHA requires a showing that "the harassment was so severe and pervasive as to alter the conditions of employment and create an abusive working environment."  <u>Etter v. Veriflo Corp.</u>, 67 Cal. App. 4th 457, 463-65 (1st Dist. 1998). While conduct occurring *exclusively* before June 22, 2009 cannot form the basis of any of Plaintiff's FEHA claims (<u>see</u> section III.a, <u>supra</u>), "acts beyond the statute of limitations might be relevant to showing a pattern of continuous harassment[.]"  <u>Fisher v. San Pedro Peninsula Hospital</u>, 214 Cal. App. 3d 590, 513 (2d Dist. 1989).  The false accusation lodged against Plaintiff on June 23, 2009, when viewed in conjunction with the earlier events that

1   Plaintiff has alleged, is sufficient to establish a claim of racial harassment.

2          Accordingly, the Court DENIES Defendant's motion to dismiss with respect to

3   Plaintiff's second and fourth causes of action.

4

5   d.      Failure to prevent

6

7          Section 12940(k) prohibits an employer from "fail[ing] to take all reasonable steps

8   necessary to prevent discrimination and harassment from occurring."  Cal. Gov't Code §

9   12940(k).  A "failure to prevent" claim raised under this section requires a predicate finding

10  of discrimination, harassment, or retaliation.  Trujillo v. North County Transit Dist., 63 Cal.

11  App. 4th 280, 286-89 (4th Dist. 1998).  Defendant contends that Plaintiff's failure to state a

12  claim for discrimination or harassment makes it impossible to state a "failure to prevent"

13  claim.   However, as stated above, the Court finds that Plaintiff has stated a claim for

14  wrongful termination in violation of public policy and retaliation.  The Court also notes that

15  Plaintiff has specifically alleged that she reported, on two separate instances, her grievances

16  regarding racial discrimination at DSW to senior level management.  (Compl. ¶¶ 16, 18.)

17  Accordingly, the Court finds that Plaintiff has stated a claim for failure to prevent.

18  //

19  //

20  //

21  //

22  //

23                              **IV.  CONCLUSION**

24

25         For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART

26  Defendant's motion to dismiss.  The Court DENIES the motion to dismiss as to Plaintiff's

27  claims for wrongful termination, retaliation, and failure to prevent (first, third, and fifth causes

28  of action), and DISMISSES with prejudice Plaintiff's claims for discrimination based on pre-

1   June 22, 2009 conduct as alleged in the second and fourth causes of action.

2       The Court also DISMISSES Plaintiff's sixth cause of action (failure to take action), as

3   Plaintiff has abandoned that claim.

4

5

6   **IT IS SO ORDERED.**

7   DATED:  October 18, 2012

8                                 BARRY TED MOSKOWITZ, Chief Judge

9                                 United States District Court

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28